UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| JOHN HAMBRIGHT, | ) | |
| | ) | Civil Action No. |
| Plaintiff | ) | 4:16-CV-236-HLM/WEJ |
| | ) | _____ |
| v. | ) | |
| | ) | |
| | ) | |
| BARTOW COUNTY, GEORGIA | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant | ) | |

---

## COMPLAINT

### Nature of the Action

1.      This is an action for damages and equitable relief brought pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. (FMLA) and Title I of the Americans with Disabilities Act, 42 U.S.C. § 12111 et seq. (ADA).

2.      The evidence will show that Defendant Bartow County, through its agents and officials, interfered with Plaintiff's right to take leave from work for his own serious medical condition, in violation of the FMLA, and discriminated against Plaintiff on the basis of his physical impairments by, *inter alia*, refusing to provide him with the reasonable accommodation of reasonable impairment-related leave in excess of his accumulated sick leave.

1

## JURISDICTION AND VENUE

3.     This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, as this action arises under the laws and Constitution of the United States.

4.     Venue is proper pursuant to 28 U.S.C. § 1391, because the Defendant resides in this district and division.

## PARTIES

5.     Plaintiff John Hambright ("Mr. Hambright") is a resident of Floyd County, Georgia, who submits himself to the jurisdiction of this court.

6.     Defendant Bartow County, Georgia (the "County") is a legal entity created by the constitution and laws of the state of Georgia, with the capacity to sue and to be sued.

7.     The County is an "employer" as defined by the FMLA and the ADA.

8.     The County may be served with the summons and complaint by personal service upon its Commissioner, Steve Taylor, at the office of the County Commissioner, which is located at 135 W Cherokee Ave, Suite 251, Cartersville, Georgia, 30120.

## Facts

9.      At all times relevant to this Complaint, Mr. Hambright was an employee of the County.

10.     Mr. Hambright had been a full-time employee of the County since May 3, 2004.

11.     Prior to his termination, Mr. Hambright was a paramedic with the County's Emergency Medical Services (EMS) Department.

12.     At all times relevant to this Complaint, Mr. Hambright suffered from a number of physical impairments.

13.     Mr. Hambright has had numerous injuries to his back, shoulder, and arm over time.

14.     Mr. Hambright has had a number of surgeries related to these injuries.

15.     Mr. Hambright has chronic pain as a result of his injuries.

16.     During the course of his employment with the County, Mr. Hambright treated his chronic pain with medications prescribed by his physician.

17.     Mr. Hambright's chronic pain also required him to take intermittent leave in order to rest during flare-ups of pain.

18.     At all times relevant to this Complaint, Kevin Garren ("Mr. Garren") was the Director of the County's EMS Department.

19.     Mr. Garren inquired into Mr. Hambright's injuries and the pain medication that he used to treat same, and required Mr. Hambright to disclose information related to same.

20.     In response to these inquiries, Mr. Hambright discussed his chronic pain, and the medications he used to treat same, with Mr. Garren.

21.     In January of 2015, Mr. Garren required Mr. Hambright to submit to a "Fitness for Duty" examination.

22.     Mr. Hambright passed the Fitness for Duty examination and received certification that he could continue his work on his current medications with no further restrictions.

23.     Despite this, in February or March of 2015, Mr. Garren required Mr. Hambright to present a letter from his pain management doctor that Mr. Hambright could perform all functions of his job at "100%" while using his current course of prescribed pain medications.

24.     Mr. Hambright's doctor provided Mr. Hambright with documentation certifying that he could perform the essential functions of his job at "100%" while using one of his two prescribed medications.

4

25.     Mr. Hambright provided the letter from his doctor to Mr. Garren, as required.

26.     Mr. Hambright complied with his doctor's recommendation regarding the medications he could use at work and continue at "100%".

27.     Upon information and belief, Mr. Garren disclosed to third parties information regarding Mr. Hambright's chronic pain and the medications he used to treat same, without permission from Mr. Hambright, and without legal justification.

28.     On or about Thursday, September 24, 2015, Mr. Hambright experienced a flare-up of back pain that he knew would likely prevent him from working his shift on Friday, September 25, 2015.

29.     On that day, Mr. Hambright called a supervisor, Matt Moore ("Mr. Moore"), and stated that he needed to take off his September 25, 2015 shift as a result of his pain.

30.     Mr. Moore advised Mr. Hambright that he would need to present a doctor's note upon his return.

31.     On Saturday, September 26, 2015, Mr. Hambright visited his physician, who conducted an x-ray and found a compression fracture in the area where Mr. Hambright was having the pain.

32.     The doctor prescribed Mr. Hambright some medication for short-term relief of the pain and advised him to take another day off work, to return on October 1, 2015.

33.     Mr. Hambright called Bartow EMS and spoke with a supervisor, Brandon Duncan ("Mr. Duncan").

34.     Mr. Hambright informed Mr. Duncan that he needed to take off the September 28, 2015 shift due to his pain and the medication he had taken for same, on the advice of his doctor.

35.     At that time, Mr. Hambright had exhausted his accumulated sick leave, but he was eligible for additional leave under FMLA.

36.     Mr. Duncan asked Mr. Hambright if he wanted to take FMLA leave for the absence.

37.     Mr. Hambright asked Mr. Duncan if he needed to take FMLA leave.

38.     Mr. Duncan responded, "I'm just looking out for you, if you know what I mean."

39.     Mr. Hambright responded that he did wish to take FMLA leave.

40.     Mr. Duncan then responded that Mr. Hambright could only take FMLA leave if he was going to be absent three (3) shifts in a row, which Mr. Hambright was not.

6

41.     Mr. Duncan also stated that, "it would be a lot of paperwork."

42.     It was not true that Mr. Hambright was only eligible for FMLA leave if he was going to be absent for three (3) shifts in a row.

43.     Mr. Duncan did not inform Mr. Hambright that he would be terminated if he did not invoke his right to FMLA leave.

44.     Based on Mr. Duncan's statement that Mr. Hambright was not eligible for FMLA leave unless he would be absent three (3) shifts in a row, and based on Mr. Duncan's failure to tell Mr. Hambright that he would be terminated if he did not take FMLA leave, Mr. Hambright did not seek FMLA leave.

45.     On or about Wednesday, September 30, 2015, Mr. Hambright heard from a third party that he had been terminated.

46.     Mr. Hambright called Bartow EMS on that same day and spoke with Mr. Garren, who stated to him "I've got some bad news; because you didn't take FMLA, you're fired."

47.     Mr. Hambright was formally dismissed from employment effective September 30, 2015.

## LEGAL CLAIMS

48.     By this reference, Plaintiff reincorporates the Complaint's factual allegations as if fully set forth herein.

7

<u>Count I</u>
<u>FMLA Interference</u>

49.     FMLA requires employers to provide eligible employees with 12 workweeks of leave, on either a continuous or intermittent basis, during any 12-month period due to the employee's serious health condition. 29 U.S.C.A. § 2612.

50.     FMLA forbids an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right to protected leave. 29 U.S.C.A. § 2615.

51.     An employer who fails to provide accurate information to an employee regarding said employee's entitlement to FMLA leave, and the consequences of failing to invoke said leave, may be held liable for interfering with said employee's rights under the FMLA. <u>See</u> 29 CFR 825.300.

52.     Mr. Hambright was eligible to take protected FMLA leave, on either a continuous or intermittent basis, at the time he was terminated, due to his serious medical condition.

53.     The County, through the acts of its agents and officials, interfered with Mr. Hambright's right to take leave protected by FMLA by incorrectly informing him that he could not take FMLA leave unless he was going to be out for three (3) consecutive shifts, by telling him it would be "a lot of paperwork,"

and by failing to inform him that he would be terminated if he did not invoke his right to FMLA leave when he was in fact entitled to it.

54.     But for these actions by the County, Mr. Hambright would not have been terminated. Any reasonable person in Mr. Hambright's position would have elected to take protected FMLA leave if he was properly informed that he was entitled to it, and if he was informed that his failure to take such leave would result in his termination.

55.     Upon information and belief, the County's violation of Mr. Hambright's FMLA rights was willful or, in the alternative, carried out with deliberate indifference to his rights.

56.     Mr. Hambright is entitled to recover all economic losses caused by the County's interference with his FMLA rights, in addition to liquidated damages, interest, and reasonable attorneys' fees and costs. 29 U.S.C. § 2617.

Count II<br>ADA (Discrimination)

57.     Mr. Hambright has exhausted his administrative remedies with respect to his claims under the ADA by filing a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) within 180 days of his termination, and filing this lawsuit within 90 days of receipt of a notice of right to sue from EEOC.

58.     At all times relevant to this Complaint, Mr. Hambright was a qualified individual with a disability as defined by the ADA.

59.     Mr. Hambright's numerous injuries, and the chronic pain that resulted from it, were impairments that limited his ability to perform numerous major life activities, including his ability to perform manual functions and to work in the absence of reasonable accommodations such as proper pain medication and intermittent leave from work. Therefore, he was a qualified individual with a disability as defined by the ADA.

60.     The County had a record of Mr. Hambright's impairment due to, among other things, his Fitness of Duty examination and his numerous doctor's notes regarding his medication.

61.     The ADA prohibits discrimination against a qualified individual with a disability, and discrimination includes the failure to provide reasonable accommodations that will allow a qualified individual with a disability to continue working.

62.     By refusing to provide additional leave to Mr. Hambright in order for him to recover for his flare up of pain, the County denied Mr. Hambright a reasonable accommodation for his disability.

63.     By terminating Mr. Hambright for his absences on September 25 and 28, 2015, with knowledge that said absences were the result of Mr. Hambright's impairments and his need to care for same, the County discriminated against Mr. Hambright on the basis of his disability.

64.     Mr. Hambright is entitled to recover all damages available to him under the ADA.

Count III<br>ADA (Wrongful Disclosure)

65.     Mr. Hambright has exhausted his administrative remedies with regard to his claims under the ADA by filing a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) within 180 days of his termination, and filing this lawsuit within 90 days of receipt of a notice of right to sue from EEOC.

66.     The ADA strictly limits the type of inquiries an employer may make regarding its employees' medical conditions as well as the uses to which this information may be put once it is gathered. Under the ADA, employers "shall not [. . .] make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A).

67.     The ADA further requires that, where an individual has disclosed private medical information in response to an employment-related inquiry as described above, said information may only be disclosed in a number of strictly-limited circumstances, which are: (i) supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations; (ii) first aid and safety personnel may be informed, when appropriate, if the disability might require emergency treatment; and (iii) government officials investigating compliance with this chapter shall be provided relevant information on request. 42 U.S.C. § 12112(d)(3)(B).

68.     Upon information and belief, former Director Garren disclosed to numerous third parties private medical information that Mr. Hambright had provided to Mr. Garren in response to Mr. Garren's inquires, without Mr. Hambright's permission and without legal justification.

69.     Mr. Hambright has suffered significant injury as a result, including emotional distress, for which he is permitted to recover damages.

**WHEREFORE**, Plaintiff prays:

A)      Afford Plaintiff a trial by jury on all issues so triable;

B)      Award to Plaintiff all damages available to him by law for all injuries proximately resulting from the Defendant's actions, in an amount to be determined by the enlightened conscious of the jury;

C)      Deem Plaintiff a prevailing party and award him attorneys' fees and expenses of litigation;

D)      Award Plaintiff pre-judgment and post-judgment interest;

E)      Order the County to reinstate Plaintiff to his position;

F)      Award Plaintiff such other equitable or monetary relief as the Court deems just and proper.

Respectfully submitted, this July 28, 2016.

/s/ James Radford
James Radford
Georgia Bar No. 108007
Caleb Gross
Georgia Bar No. 960323
RADFORD & KEEBAUGH, LLC
315 W. Ponce de Leon Ave.
Suite 1080
(678) 271-0300
james@decaturlegal.com
caleb@decaturlegal.com

**ATTORNEYS FOR PLAINTIFF**