IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

JOHN HAMBRIGHT,

      Plaintiff,

  v.

BARTOW COUNTY, GEORGIA,

      Defendant.

CIVIL ACTION FILE

NO. 4:16-CV-236-HLM-WEJ

## FINAL REPORT AND RECOMMENDATION

Plaintiff, John Hambright, filed this action [1], as amended [30], against his former employer, Bartow County, Georgia (the "County"), alleging claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 et seq., and Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 701 et seq. (See Am. Compl. ¶¶ 1, 49-72.) After a period of discovery, this matter is before the Court on cross-motions for summary judgment.

Mr. Hambright seeks entry of partial summary judgment as to liability on his claim that the County interfered with his rights under the FMLA by (1) failing to provide accurate information as to his entitlement to such leave and the consequences of not designating the leave as FMLA, and (2) failing to provide

him a reasonable opportunity to invoke his rights, and instead terminating him immediately upon learning of his need for FMLA-qualifying leave.  (See Pl.'s Mot. for Partial Summ. J. with Br. in Supp. [46] 1.)  The County seeks entry of summary judgment in its favor on all of plaintiff's claims.  (See Def.'s Mot. for Summ. J. [52] 1.)   Upon review of the parties' briefs and their proposed undisputed material facts (discussed infra), for the reasons explained in detail below, the undersigned **RECOMMENDS** that Plaintiff's Motion for Partial Summary Judgment [46] be **GRANTED**, and **FURTHER RECOMMENDS** that Defendant's Motion for Summary Judgment [52] be **DENIED**.

## I.   STATEMENT OF FACTS

To assist with framing the undisputed material facts, Local Rule 56.1 requires the filing of certain documents along with a summary judgment motion. The Court lists those filings below, organized by movant.

Plaintiff Hambright as movant on his Motion for Partial Summary Judgment filed a Statement of Material Facts as to Which There is no Genuine Dispute ("PSMF") [46-1].  The County submitted a response.  (See Def. Bartow Cty.'s Resp. to Pl.'s Stat. of Mat. Facts as to Which There is no Gen. Disp. ("DR-PSMF") [60].)  As allowed by the Local Rules, defendant submitted a Statement of Additional Material Facts Regarding Plaintiff's Motion for Partial Summary

Judgment ("DSAF") [61], to which plaintiff filed a response.  (See Pl.'s Resp. to Def.'s Stat. of Add'l Mat. Facts Re Pl.'s Mot. for Partial Summ. J. ("PR-DSAF") [64-1].)

As movant on its Motion, the County filed a Statement of Material Facts as to Which There is no Genuine Issue to be Tried ("DSMF") [52-2].  Plaintiff submitted a response.  (See Pl.'s Resp. to Def.'s Stat. of Mat. Facts as to Which There is no Gen. Issue to be Tried ("PR-DSMF") [63-1].)  As allowed by the Local Rules, plaintiff submitted a Statement of Additional Material Facts ("PSAF") [63-2], to which the County filed a response.  (See Def.'s Resp. to Pl.'s Stat. of Add'l Mat. Facts ("DR-PSAF") [68].)

The Court has used the parties' proposals as the basis for the statement of facts under the following conventions.  When a party admits a proposed fact (in whole or in part), the Court accepts that fact (or the part admitted) as undisputed for the purposes of this R&R and cites only to the proposed fact.  When a party denies a proposed fact (in whole or in part), the Court reviews the record cited and determines whether that denial is supported, and if it is, whether any fact dispute is material.  The Court sometimes modifies a proposed fact per the opposing party's response or per the record cited to reflect the facts more accurately.  The Court also includes some facts drawn from its review of the

3

record, see Fed. R. Civ. P. 56(c)(3), excludes immaterial proposed facts,[1] and excludes those proposed facts which are stated as issues or legal conclusions.[2]

Given that the parties filed motions almost simultaneously, they sometimes proposed facts which, although not identically worded, make the same point. Moreover, one or both of the parties sometimes proposed identical or virtually identical facts in both an initial statement and in a statement of additional material facts. To avoid repetition, when the Court incorporates such facts, it cites to one proposed fact and employs a "see also" signal to the other(s). The Court views all proposed facts in light of the standards for summary judgment set out infra Part III. Finally, the Court rules on objections to proposed facts. Although the Court prefers to explain its rulings, given the need for brevity, the Court sometimes sustains an objection for the reasons stated by the objecting party when it deems those reasons sufficient. The Court's inclusion of a proposed fact to which an objection has been asserted implicitly overrules that objection.

---

[1] The Court excludes the following proposed facts as immaterial: PSMF ¶¶ 4, 7-8, 28; DSAF ¶¶ 2-3, 11-12, 14; DSMF ¶ 34; and PSAF ¶¶ 2-3, 6, 8-9, 28-29, 39, 57.

[2] The Court excludes the following proposed facts, or portions thereof, because they are stated as issues or legal conclusion: PSMF ¶¶ 16-17, 23; PSAF ¶¶ 41-42, 50; DSMF ¶¶ 8, 30.

4

### A.    Plaintiff's Employment and Prior FMLA Leaves

Mr. Hambright began working as a full-time paramedic with the County's Emergency Medical Services ("EMS") in May 2004.  (PSMF ¶ 1.)[3]  Over the course of several years, plaintiff suffered neck and back conditions, which resulted in plaintiff taking numerous narcotic pain medications.  (DSMF ¶ 2; see also PSMF ¶ 3 (alleging plaintiff suffers from chronic back pain); PSAF ¶ 1 (same).) [4]  Untreated, Mr. Hambright's pain condition caused severe functional impairments that prevented him from carrying out daily activities, including basic mobility, walking, and lifting.  (PSAF ¶ 11.)[5]  Plaintiff requested and received leave under the FMLA for surgeries in 2009, 2012, and 2013.  (DSMF ¶ 3; see also DSAF ¶ 8; PSAF ¶ 55.)[6]  Plaintiff did not have a need for intermittent FMLA

_____

[3] The County admits that it is an "employer" as defined by the FMLA. (PSMF ¶ 2.)

[4] The Court overrules the County's objections to PSMF ¶ 3 and PSAF ¶ 1, which are identical, as argumentative.  (See DR-PSMF ¶ 3; DR-PSAF ¶ 1.)

[5] Defendant does not dispute PSAF ¶ 11, but denies that it is material because plaintiff did not disclose his pain condition to the County.  (See DR-PSAF ¶ 11.)  This proposed fact goes to plaintiff's status as disabled under the ADA.  Moreover, defendant has cited no evidence refuting this proposed fact or supporting its contention that plaintiff never disclosed his condition.  Thus, the Court includes PSAF ¶ 11 as undisputed.

[6] The County provided plaintiff with a policies and procedures manual that

leave at the time of those requests.  (PSAF ¶ 55.)  After his surgeries, plaintiff struggled with chronic pain throughout his neck and back.  (Id. ¶ 5, as modified by DR-PSAF ¶ 5.)  Under the supervision of his physicians, Mr. Hambright uses pain medication to manage his chronic pain.  (PSAF ¶ 7, as modified by DR-PSAF ¶ 7.)  According to plaintiff, he could perform the essential functions of his job while taking his pain medications. [7]  (DSMF ¶ 7; see also DSAF ¶ 4; PSAF ¶ 10.)[8]

Several of plaintiff's co-workers were present when he was out for these surgeries and knew that he had plates in his neck.  (DSMF ¶ 4.)  Plaintiff took his medications while at work and did not always hide his medication use from his co-workers.  (Id. ¶ 5.)  Kevin Garren, then director of Bartow County EMS, was aware of plaintiff's medical issues in at least 2014.  (Id. ¶ 6; see also PSMF ¶¶ 29,

---

contained information about the FMLA.  (DSAF ¶ 9.)

[7] Immediately after plaintiff's 2012 and 2013 surgeries, his physicians advised him not to drive; however, they later cleared him to perform all the essential functions of his job while taking his medications with some adjustments. (DSMF ¶ 10, as modified by PR-DSMF ¶ 10; see also PSAF ¶ 4 (the Court overrules DR-PSAF ¶ 4 as argumentative).)

[8] The Court overrules as argumentative defendant's objection regarding plaintiff's claim that he could perform the essential functions of his job.  (See DR-PSAF ¶ 10.)

31.)[9]  At some point in 2014, Mr. Garren began to question plaintiff frequently about what types of medication he was using.  (PSAF ¶ 12.)[10]  Mr. Hambright disclosed to Mr. Garren the specific pain medications that he used.  (Id. ¶ 13, as modified by DR-PSAF ¶ 13.)

### B.  Events in 2015

#### 1.  The Fitness for Duty Examination

Mr. Garren grew concerned over plaintiff's ability to perform his job duties (DSMF ¶ 9, as modified by PR-DSMF ¶ 9), and in February 2015 requested that Mr. Hambright submit to a fitness for duty examination with a physician.  (DSMF ¶ 11; see also PSAF ¶ 14, as modified by DR-PSAF ¶ 14; PSMF ¶ 30.)  As part of the "fitness for duty" process, Mr. Garren asked plaintiff to bring in a letter from his medical provider stating that he was able to work at "100%" under his current

---

[9] The Court overrules defendant's objections to PSMF ¶¶ 29 and 31 as argumentative.  (See DR-PSMF ¶¶ 29, 31.)  Notably, defendant complains that plaintiff's use of the term "medical issues" is ambiguous, yet defendant used that same term in DSMF ¶ 6.  Moreover, because those two proposed facts are sufficiently similar to DSMF ¶ 6, the Court need only include them as additional supporting references.

[10] The Court overrules defendant's objection to PSAF ¶ 12 as argumentative.  The proposed fact is also supported by the record citation and is not contradicted by plaintiff's deposition testimony.  (See DR-PSAF ¶ 12.)

course of pain medications. (PSAF ¶ 15.) Mr. Hambright requested (id. ¶ 16)[11] and received the letter from Dr. Hurd (id. ¶ 17, as modified by DR-PSAF ¶ 17).[12] Dr. Hurd recommended that Mr. Hambright adjust his medications while working on shift—specifically, that he use Tramadol, but not use Hydrocodone. (PSAF ¶ 18.)[13] Plaintiff abided by Dr. Hurd's instructions. (Id. ¶ 20.)[14]

Mr. Hambright gave Mr. Garren the letter from Dr. Hurd. (PSAF ¶ 19, as modified by DR-PSAF ¶ 19.)[15] Mr. Hambright was deemed physically fit for duty, but was required to provide a certification allowing him to take medications while at work. (DSAF ¶ 13; Def.'s Ex. 7 [52-11] (Feb. 13, 2015, Fit for Duty

---

[11] The Court overrules defendant's objection to PSAF ¶ 16 as argumentative. (See DR- PSAF ¶ 16.) Moreover, defendant has failed to refute the proposed fact, which is supported by the record citation provided.

[12] The Court sustains defendant's objection to the portion of PSAF ¶ 17 regarding Dr. Hurd's thought process and the contents of the letter as unsupported. (See DR-PSAF ¶ 17.)

[13] The Court overrules defendant's objection because plaintiff may testify to his conversation with Dr. Hurd and the record citation supports the evidence. (See DR-PSAF ¶ 18.)

[14] The Court overrules defendant's objection because it points to no probative evidence showing that a positive drug screen for Hydrocodone refutes PSAF ¶ 20. (See DR-PSAF ¶ 20.)

[15] The Court sustains defendant's objection to the portion of PSAF ¶ 19 regarding the contents of the letter because it is unsupported by the record citations and would be inadmissible hearsay if offered for the truth of the matter asserted. (See DR-PSAF ¶ 19.)

Physical); see also DSMF ¶ 12.)[16]  Mr. Garren told Mr. Hambright that he had

received the fitness for duty documents and that he was clear for duty.  (PSAF ¶¶

21, 25.)[17]  Mr. Garren did not tell plaintiff that the letter or fitness for duty

process was insufficient or request additional documentation from him at that

time.[18]  (PSAF ¶ 22, but see DR-PSAF ¶ 22 (citing Mr. Garren's August 2015

notation that plaintiff needed to submit medical documentation regarding his July

21, 2015 absence).)

After the fitness for duty process, Mr. Hambright worked his normal full-

time schedule.  (PSAF ¶ 23.)[19]  However, during the course of 2015, plaintiff

_____

[16] The Court omits DSMF ¶¶ 13-14, regarding work authorization from plaintiff's pain management physicians, as Mr. Hambright has cited record evidence directly refuting those proposed facts.  (See PR-DSMF ¶¶ 13-14.)

[17] The Court overrules defendant's objections to PSAF ¶¶ 21 and 25 as argumentative and because defendant has not refuted the proposed facts, which are supported by the record citations.  (See DR-PSAF ¶¶ 21, 25.)

[18] In a September 29, 2015 letter regarding Mr. Hambright's termination, Mr. Garren references the fitness for duty physical and states that "to my knowledge he was fit for duty."  (PSAF ¶ 24 (quoting Sept. 29, 2015 Letter [63-4]), as modified by DR-PSAF ¶ 24.)

[19] The Court overrules defendant's objection to PSAF ¶ 23 as the County failed to cite record evidence refuting that proposed fact and it is material.  (See DR-PSAF ¶ 23.)

9

completely exhausted his sick leave and vacation leave.   (DSMF ¶ 15.) [20]

Plaintiff was advised in July/August 2015 that if he believed he needed FMLA,

he should declare FMLA and provide documentation from a physician if he was

out for an illness and had no accrued time off.   (DSAF ¶ 7; see also DSMF ¶ 17,

as modified per record cited (Def.'s Ex. 5 [52-9], at 3) and PR-DSMF ¶ 17.) [21]   It

is undisputed that plaintiff was eligible for FMLA leave.   (PSMF ¶¶ 16-17; DR-

PSMF ¶¶ 16-17 (admitting eligibility for FMLA); see also PSAF ¶¶ 41-42; DR-

PSAF ¶¶ 41-42 (same).)

## 2.   Plaintiff's Absence on Friday, September 25, 2015

Plaintiff hurt his back in late September 2015 while moving something

heavy.   (PSMF ¶ 5, as modified per DR-PSMF ¶ 5 and record cited; see also

PSAF ¶ 26, as modified per DR-PSAF ¶ 26.)   On September 24, 2015, Mr.

Hambright made contact with Matt Moore, the Bartow EMS supervisor on duty at

---

[20] Plaintiff received two written warnings in 2015—one for missing a mandatory class in June and one for an absence which extended beyond his approved vacation leave.   (DSMF ¶ 16.)   However, plaintiff is correct that these written warnings have no bearing on whether he was entitled to FMLA leave on the dates in question (see PR-DSMF ¶ 16), which are discussed infra.

[21] Plaintiff had been absent eleven hours without leave by the time he was counseled.   Some of those hours were unrelated to his medical issues.   (DSMF ¶ 18, as modified per PR-DSMF ¶ 18.)

the time, and informed Mr. Moore that he had injured his back and would not be able to make it to work on September 25.  (PSMF ¶ 6; see also PSAF ¶ 27; DSMF ¶ 19 (plaintiff was absent on September 25, 2015), as modified by PR-DSMF ¶ 19.)[22]

After Mr. Moore learned of plaintiff's absence, he contacted plaintiff to remind him that he would need a doctor's excuse.  (DSMF ¶ 20.)  Mr. Garren learned of Mr. Hambright's request for time off and told Mr. Moore to tell him to bring in a "medical excuse" for the absence.[23]  (PSMF ¶ 9; see also PSAF ¶ 30.)[24]  Mr. Moore understood Mr. Garren's request for a doctor's excuse from Mr.

---

[22] The County denies and objects to the above fact by asserting Mr. Moore testified that he did not know the specific reason plaintiff was absent on September 25, and because he testified that he was not working on September 24. (See DR-PSMF ¶ 6; see also DR-PSAF ¶ 27.)  Any dispute here is immaterial, especially given that Mr. Moore testified that he could not remember whether Mr. Hambright called him or not.  (Moore Dep. [49] 14-17 (citations to internal page numbers).)  He also conceded that it was possible that Mr. Hambright called him even though he was not on duty.  (Id. at 17.)

[23] Plaintiff testified that he spoke to Mr. Moore on September 24, 2015, who told him to bring in a doctor's excuse before he could come back to work. (Pl.'s Dep. [47] 38.)  Mr. Moore testified that he called plaintiff and asked him to bring in a doctor's note after being told to do so by Mr. Garren.  (Moore Dep. 21, 23-24.)

[24] Defendant admits PSMF ¶ 9 (see DR-PSMF ¶ 9), but objects to the identical fact proposed in PSAF ¶ 30 (see DR-PSAF ¶ 30).  Thus, the Court overrules DR-PSAF ¶ 30 as argumentative.

11

Hambright was due to the fact that his absence related to some medical issue.[25] (PSMF ¶ 10; see also PSAF ¶ 31.)[26]

On Saturday, September 26, 2015, plaintiff visited a physician (Dr. Robert Norris), who prescribed him a muscle relaxer (Hambright Decl. [63-3] ¶ 23 & Ex. B (prescription for Baclofen, 90 pills and allowing 2 refills)) and gave him a "Return to Work/School" form stating that plaintiff was cleared to return to work on October 1, 2015.  (DSMF ¶ 21, as modified per PR-DSMF ¶ 21 and record cited (Def.'s Ex. 2 [52-4], at 57).)[27]  Dr. Norris advised plaintiff not to work his upcoming September 28 shift and to take off work until October 1, and provided him with a doctor's note to that effect.  (PSAF ¶¶ 33-34.)[28]

_____

[25] The Court excludes DSAF ¶ 1 because the proposed fact is not supported by the record citation provided.  (See PR-DSAF ¶ 1.)

[26] Nothing in defendant's objections (see DR-PSMF ¶ 10; DR-PSAF ¶ 31) merits exclusion of PSMF ¶ 10 and PSAF ¶ 31.

[27] The parties dispute whether plaintiff's doctor found a compression fracture when he examined Mr. Hambright on September 26.  (Compare PSMF ¶ 11 and PSAF ¶ 32, with DR-PSMF ¶ 11 and DR-PSAF ¶ 32.)  Given that the County never saw any diagnosis from this doctor, any dispute is immaterial.

[28] The Court overrules defendant's materiality objections to PSAF ¶¶ 33-34. (See DR-PSAF ¶¶ 33-34.)

### 3.      Plaintiff's Absence on Monday, September 28, 2015

On September 26, 2015, plaintiff called Brandon Duncan, a different supervisor at Bartow EMS, stating that he would be absent for his shift on September 28, 2015.  (DSMF ¶ 22; <u>see also</u> PSMF ¶¶ 12, 15.)  Mr. Hambright informed Mr. Duncan that the time off was due to the possible compression fracture in his back and his doctor's recommendation that he take some time off work to relieve the pain.  (PSMF ¶ 13; PSAF ¶ 35.)[29]

Mr. Duncan asked Mr. Hambright if he wanted to take FMLA leave.  (DSMF ¶ 23[30]; <u>see also</u> Duncan Dep. [50] 17.)  Plaintiff said, "Yes."  (Pl.'s Dep. 40; <u>see also</u> PSAF ¶ 36.)[31]  Mr. Duncan then told Mr. Hambright that he would

_____

[29] The testimony defendant cites in its objections (<u>see</u> DR-PSMF ¶ 13; DR-PSAF ¶ 35) is inapposite to the proposed fact.  Mr. Duncan testified that he could not "remember exactly what was said or not" in his conversation with Mr. Hambright on September 26.  (Duncan Dep. 15 (citations to internal page numbers).)  Without more, defendant has failed to refute the proposed fact.

[30] Plaintiff denies DSMF ¶ 23 as taken out of context in light of the entire conversation between himself and Mr. Duncan.  (<u>See</u> PR-DSMF ¶ 23.)  To address that concern, the Court includes the remaining portion of their conversation as reported by plaintiff in the text following this note.

[31] Plaintiff and Mr. Duncan have differing recollections of this portion of their conversation.  (<u>Compare</u> Hambright Decl. ¶ 26, <u>with</u> Duncan Dep. 20.)  Defendant's materiality objections to PSAF ¶¶ 36, 37, and 38 are overruled.  Moreover, because the Court considers these proposed facts in conjunction with defendant's Motion for Summary Judgment, it must view them in the light most

have to be absent for three shifts to take FMLA leave and that it would be a lot of paperwork.  (Pl.'s Dep. 40; <u>see also</u> PSAF ¶¶ 37-38.)  Plaintiff responded that he would only be out for two shifts and that, given Mr. Duncan's statement, he could not take FMLA leave.  (Pl.'s Dep. 40.)

Shortly after his conversation with Mr. Hambright, Mr. Duncan filled out a document [46-6] bearing the simple heading "FMLA," which he described as the "standard form we use when someone calls in sick."  (PSMF ¶ 14; <u>see also</u> PSAF ¶ 40.)  The form lists plaintiff's name, his department (EMS), and his first day absent as "9-28-15."  (<u>See</u> FMLA form [46-4], at 1.)  (As noted above, that was not plaintiff's first day absent.)  The form also queried, "Was employee asked: Do you need FMLA."  In response, Mr. Duncan checked the "Yes" block.  (<u>Id.</u>)  Under "Response from employee," Mr. Duncan checked the "No" block.  (<u>Id.</u>)

After learning of plaintiff's need for leave on September 25 and 28, the County "did not have any communication with him to the effect that if he would bring in some medical documentation, he was eligible for FMLA leave."  (Garren

---

favorable to Mr. Hambright.  (<u>See</u> DR-PSAF ¶¶ 36-38.)  Thus, the Court cannot exclude them simply because defendant disputes them.

14

Dep. [48] 45.)[32]   Likewise, the County did not send Mr. Hambright any notice of his FMLA eligibility for the days he was absent.  (PSMF ¶ 26; see also PSAF ¶ 53.)[33]  Mr. Hambright could not have foreseen his need to be absent from work on September 25 and 28, 2015.  (PSAF ¶ 56, as modified by DR-PSAF ¶ 56.)

Mr. Hambright was prepared to return to work on his next shift following his September 28 absence and intended to do so.  (PSMF ¶ 18; see also PSAF ¶ 43.)[34]  However, before his return, he received a call from a fellow employee telling him that he had been terminated.  (PSMF ¶ 22; see also PSAF ¶ 47.)[35]  On the phone, Mr. Garren stated to Mr. Hambright, "I've got bad news for you. Because you didn't take FMLA, you're fired."   (PSAF ¶ 48.) [36]   Plaintiff

---

[32] Defendant objects to PSMF ¶ 27 and PSAF ¶ 54 as an incomplete statement of the facts.  (See DR-PSMF ¶ 27; DR-PSAF ¶ 54.)  Thus, the Court quotes the record plaintiff cites in the sentence preceding this note.

[33] The Court overrules defendant's objections to PSMF ¶ 26 and PSAF ¶ 53 as argumentative; moreover, the proposed facts are supported by the record citation provided.  (See DR-PSMF ¶ 26; DR-PSAF ¶ 53.)

[34] The Court overrules defendant's objections to PSMF ¶ 18 and PSAF ¶ 43 as argumentative, and because those facts are supported by the record cited.  (See DR-PSMF ¶ 18; DR-PSAF ¶ 43.)

[35] The Court overrules defendant's materiality objections to the fact preceding this note.  (See DR-PSMF ¶ 22; DR-PSAF ¶ 47.)

[36] The Court overrules defendant's materiality objection to PSAF ¶ 48; moreover, defendant failed to refute that proposed fact with a citation to record

explained to Mr. Garren his conversation with Mr. Duncan, and the fact that he did want to take FMLA leave, but Mr. Garren responded that his only recourse was to file an appeal with the County.  (Id. ¶ 49.)[37]

### C.   Plaintiff's Private Medical Information

Mr. Garren openly discussed the fact that Mr. Hambright used prescription medications and spoke negatively about his ability to work as a result to employees at Bartow County, including Larry Gillespie.  (PSAF ¶ 61.)[38]  Mr. Garren told Mr. Gillespie that he "didn't see how [Mr. Hambright] could work as an EMT" given that he was "on a host of medications."  (Id. ¶ 62.)  Mr. Garren made these statements "in a casual manner in an open break room . . . where others could hear," and not for any job-related purpose.  (Id. ¶ 63.)  Shortly after terminating Mr. Hambright, Mr. Garren told employee Joseph Wheelis that the person he had just terminated was "on a bunch of pain medications" who

---

evidence.  (See DR-PSAF ¶ 48.)

[37] The Court overrules defendant's materiality objection to PSAF ¶ 49; moreover, defendant failed to refute that proposed fact with a citation to record evidence.  (See DR-PSAF ¶ 49.)

[38] Defendant objects to and disputes PSAF ¶¶ 61-64, regarding plaintiff's wrongful disclosure claim.  (See DR-PSAF ¶¶ 61-64.)  The Court considers those proposed facts because they are material and supported by plaintiff's record citations, and the record evidence cited by defendant fails to refute them.

"shouldn't be out there working."  (Id. ¶ 64.)  Mr. Wheelis knew from the context

that Mr. Garren was referring to Mr. Hambright.  (Id. ¶ 65.)[39]  Plaintiff states that

he has experienced anger, sadness, embarrassment, and a sense of violation as a

result of the disclosures, due to the negative stereotypes sometimes associated

with the use of pain medication.  (Id. ¶ 66.)[40]

### D.  Plaintiff's Termination

Under Bartow County policy, failure to provide certification when

requested may result in denial of further sick leave and/or discipline, including

dismissal.  (DSMF ¶ 24.)[41]  Absence without a grant of leave, even for a part of a

day, "shall be cause of disciplinary action, including dismissal from employment

with Bartow County."  (Id. ¶ 25.)

---

[39] The Court overrules defendant's objections to materiality and admissibility of PSAF ¶ 65.  (See DR-PSAF ¶ 65.)  Mr. Wheelis may testify to his interpretation of Mr. Garren's statement.  (See Wheelis Decl. [63-8] ¶ 4.)

[40] The Court overrules defendant's materiality objection to PSAF ¶ 66, as that proposed fact supports plaintiff's allegations of damages resulting from the alleged wrongful disclosure of his private medical information.  (See DR-PSAF ¶ 66.)

[41] Plaintiff does not dispute that DSMF ¶¶ 24 and 25 correctly state the County's policy, but argues that the policy is immaterial.  (See PR-DSMF ¶¶ 24-25.)  The Court addresses the materiality of those proposed facts in its analysis infra, and therefore includes them in the Statement of Facts.

17

On September 29, 2015, Mr. Garren prepared a memorandum regarding Mr.

Hambright, which provides as follows:

> I am recommending that John Hambright be dismissed and separated from Bartow County EMS for multiple absences and most recently for unexcused absences, absence without leave on Friday, September 25th, and again on Monday September 28, 2015.   Section XIII, PAGE 42, Article 8 (absence without leave).   John was asked if he needed FMLA on September 26, 2015 and he stated no.
>
> As of September 28th, John has a zero balance of sick time and vacation.   Additionally, I referred John for a fit for duty physical within the past twelve months and to my knowledge he was fit for duty.   John was counseled on July 30th by myself and his Captain, Captain Matt Moore about excessive use of sick time and no accrued sick-time.[42]

(Def.'s Ex. 11 [52-15], at 1; see also PSMF ¶ 20 (quoting memorandum); PSAF ¶

45 (same).) [43]   Mr. Garren gave his memorandum to the County's Human

Resources Director, Samantha Southern.   (Garren Dep. 7 (citations to internal

_____

[42] Mr. Garren's memorandum closed with citations to the following County policies:  "Absence without Leave; Section XIII, Article 8 (page 42)" and "Abuse of Sick Leave; Section VIII, Subsection B, Article 4, (page 18)."  (Def.'s Ex. 11 [52-15], at 1.)

[43] The Court overrules defendant's materiality objection to PSAF ¶ 45, because the quoted memorandum is relevant.  (See DR-PSAF ¶ 45.)  Additionally, DSAF ¶ 5 and DSMF ¶ 26 (proposing that Mr. Garren recommended plaintiff for termination due to multiple absences) are redundant of the memorandum quoted above; thus, the Court does not include them or address plaintiff's objections to them.  (See PR-DSAF ¶ 5; PR-DSMF ¶ 26.)

page numbers); see also PSMF ¶ 19, as modified by DR-PSMF ¶ 19; PSAF ¶ 44, as modified by DR-PSAF ¶ 44.)

The County prepared a "Termination Report" stating that plaintiff's termination was effective September 30, 2015, which was the day after Mr. Garren's memorandum.   (Def.'s Ex. 11 [52-15], at 2.)   The form checks "Absenteeism/Lateness" as the "Reason for Separation" and lists plaintiff's "attendance" as "Unsatisfactory."  (Id.)  Under "Additional Comments," the form states "exhausted vacation/sick time multiple sick/call outs."  (Id.)  Mr. Garren signed the form on October 6, 2015.  (Id.; see also Garren Dep. 57.)

On October 7, 2015, Mr. Hambright filed an appeal letter with Ms. Southern, and gave her the medical excuse that Dr. Norris had given to him on September 26.[44]  (Hambright Decl. ¶ 34; see also PSAF ¶ 58.)[45]

―――――――――――――

[44] Plaintiff disputes DSMF ¶ 27, which asserts that he never submitted a doctor's excuse or certification, even after learning of Mr. Garren's recommendation.  (PR-DSMF ¶ 27.)  The Court sustains that objection, as plaintiff's record citation directly refutes the proposed fact.  Additionally, the Court already has addressed the parties' dispute over whether plaintiff provided a clearance letter from his pain management physician supra Part I.B.1.

[45] The Court overrules defendant's objection to PSAF ¶ 58 because that proposed fact is supported by the record citation and defendant has failed to refute it.  (See DR-PSAF ¶ 58.)

On October 8, 2015, the County completed and released to Mr. Hambright a Georgia Department of Labor Separation Report.  (Def.'s Ex. 11 [52-15], at 3.) This form reflects plaintiff's last day of employment as September 30, 2015.  (Id.) Given these facts, it is undisputed that the County terminated Mr. Hambright the day after Mr. Garren submitted his memorandum.  (PSMF ¶ 21; see also DSMF ¶ 1, as modified per record cited); PSAF ¶ 46.)[46]

The parties disagree over whether Mr. Garren or the County's sole commissioner, Mr. Steve Taylor, was the decisionmaker regarding plaintiff's termination.  (Compare DSMF ¶¶ 26, 29; DSAF ¶ 6, with PSMF ¶¶ 24-25; PSAF ¶¶ 51-52.)   The County contends that Commissioner Taylor approved Mr. Garren's recommendation.   (DSMF ¶ 29.)   However, as discussed below, defendant is foreclosed from making this contention at this late stage of the case.

Defendant did not identify Mr. Taylor as someone with general knowledge in its Initial Disclosures [15].  In written discovery propounded by plaintiff, he asked defendant to identify each and every person who was involved in the

---

[46] For the reasons set forth in the paragraph preceding this note, the Court overrules as argumentative DR-PSMF ¶ 21 and DR-PSAF ¶ 46.

decision to terminate his employment and to state their role in that decision.  The

County responded as follows:

> Kevin Garren was the Director of Bartow County EMS at the time of
> Plaintiff's termination.  Garren decided to dismiss Plaintiff because
> despite having exhausted his sick and leave time, he continued to
> miss shifts at Bartow EMS without proper documentation excusing
> his absence. . . .

(See excerpts from Def. Bartow Cty.'s Resp. & Objs. to Pl.'s First Interrogs. No.

3 [46-3], at 5, quoted in PSMF ¶ 24 and PSAF ¶ 51.)   The County never

supplemented to identify Commissioner Taylor as the decisionmaker.  (See Pl.'s

Resp. [63] 10; Pl.'s Surreply [67] 3 & n.1.)

Defendant's contention that plaintiff was aware Mr. Taylor had final

decision-making authority is not well taken.  (Def.'s Reply [65] 4-6.)  Defendant

cites Ms. Southern's deposition transcript as support for this contention (id. at 5;

however, she did not testify that Commissioner Taylor was the actual

decisionmaker with regard to plaintiff's termination.  (See Southern Dep. [51] 22-

23 (testifying as to County policy).)   Moreover, Mr. Garren testified to his

understanding that, as EMS Director, he had discretion to fire an employee.

(Garren Dep. 8.)   As Mr. Garren further explained, there was no independent

investigation by anyone after he submitted his memorandum:

> Q.     [T]his wasn't the kind of situation where you gave this
> [memorandum] to [Ms. Southern] and then someone else went out

21

and did an investigation and then made a decision.  This was a situation where you let them know about your decision and they said, okay, you can do that and then you went and did it, correct?

A.   I think that's correct.

(Id. at 8; deposition excerpt quoted in PSMF ¶ 25 & PSAF ¶ 52.) [47]

Finally, because defendant's contention that it would have fired plaintiff regardless of his September 2015 absences is an affirmative defense, it is not relevant at this stage of the litigation, as discussed infra Part III.B.1.  Thus, the Court overrules defendant's objections to PSMF ¶¶ 24-25 and PSAF ¶¶ 51-52, as the County did not timely assert that Commissioner Taylor was the decisionmaker, and the undisputed evidence establishes that Mr. Garren was the decisionmaker and that no independent investigation occurred after he submitted his memorandum dated September 29, 2015.  (See DR-PSMF ¶¶ 24-25; DR-PSAF ¶¶ 51-52.)

––––––––––––––––––––

[47] Indeed, Mr. Taylor's assertion that he terminated plaintiff on some unidentified date in October 2015 (see Taylor Decl. [52-16] ¶ 3) is inconsistent with the dates reflected on the documents discussed supra, which show plaintiff's last date of employment as September 30, 2015.  The County submits no probative evidence to explain this discrepancy.

22

### E.    Post-Termination Events

Plaintiff had a hearing on October 14, 2015, regarding his termination.[48] (DSAF ¶ 10; <u>see also</u> DSMF ¶ 28.)[49]   According to Ms. Southern, the Commissioner had designated the hearing as one for name-clearing purposes only and it was not an opportunity for Mr. Hambright to get his job back.  (Southern Dep. 20-21; <u>see also</u> PSAF ¶ 59, as modified by DR-PSAF ¶ 59.)

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on December 4, 2015, alleging retaliation, age discrimination, and disability discrimination.  (DSMF ¶ 35; <u>see also</u> Def.'s Ex. 1 [52-3], at 1.)  As a result of his termination, plaintiff has lost income as well as insurance and retirement benefits.  (PSMF ¶ 32; <u>see also</u> PSAF ¶ 60.)[50]

---

[48] The Court sustains plaintiff's objection to DSMF ¶ 1, regarding his termination date, because that proposed fact is not supported by the record citation.  (<u>See</u> PR-DSMF ¶ 1; <u>see also</u> Def.'s Ex. 11 (documenting plaintiff's termination date as Sept. 30, 2015).)

[49] Plaintiff disputes DSMF ¶ 28, regarding the purpose of the October 14, 2015 hearing.  (<u>See</u> PR-DSMF ¶ 28.)  The Court includes the sentence following this note to clarify the purpose of the hearing.

[50] The Court overrules defendant's objection to PSAF ¶ 60 as argumentative.  (<u>See</u> DR-PSAF ¶ 60.)

Two months after plaintiff's termination, he secured employment at Metro Ambulance Service ("Metro").  (DSMF ¶ 31.)  Mr. Hambright worked without needing intermittent leave from Metro from December 2015 through November 2016, before requesting time off due to back pain.  (Id. ¶ 32.)  Mr. Hambright's medical appointments with his physicians are regularly scheduled on days he is not scheduled to work at either the County or Metro.  (Id. ¶ 33.)  Additionally, in the past year, Mr. Hambright has taken multiple, long over-the-road trips transporting dogs from Floyd County, Georgia to Cincinnati, Ohio. (Id. ¶ 36.)

## II.   SUMMARY JUDGMENT STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." Rice-Lamar v. City of Fort Lauderdale, 232 F.3d 836, 840 (11th Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  Those materials may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made

24

for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The non-moving party is then required "to go beyond the pleadings" and present competent evidence "showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). If in response the non-moving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate. Rice-Lamar, 232 F.3d at 840. "In determining whether genuine issues of material fact exist, [the Court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party." Id. (citing Anderson, 477 U.S. at 255).

In deciding a summary judgment motion, the court's function is not to resolve issues of material fact but rather to determine whether there are any such issues to be tried. Anderson, 477 U.S. at 251. The applicable substantive law

25

will identify those facts that are material.  <u>Id.</u> at 248.  Facts that are disputed, but which do not affect the outcome of the case, are not material and thus will not preclude the entry of summary judgment.  <u>Id.</u>  Genuine disputes are those in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Id.</u>  For factual issues to be "genuine," they must have a real basis in the record.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  When the record as a whole could not lead a rational trier of fact to find for the non-movant, there is no "genuine issue for trial."  <u>Id.</u> at 587.

Cross-motions for summary judgment do not change the above standard. <u>Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church</u>, 499 F.3d 32, 38 (1st Cir. 2007).  Rather, "a court must consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law."  <u>Warshauer v. Chao</u>, No. 4:06-CV-0103-HLM, 2008 WL 2622799, at *24 (May 7, 2008) (internal citations and quotations omitted).  "Both motions must be denied if there is a genuine issue of material fact.  But if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment."  10A Charles Alan Wright et al., <u>Federal Practice & Procedure</u> §2720 (3d ed. 2009).

III.   <u>ANALYSIS</u>

The Amended Complaint alleges that the County interfered with plaintiff's FMLA rights by failing to comply with employer notice obligations under 29 C.F.R. § 825.300, incorrectly informing plaintiff of his rights, telling him it would be "a lot of paperwork," failing to inform plaintiff that he would be terminated if he did not invoke those rights, and terminating his employment before he formally could invoke his FMLA rights.  (<u>See</u> Am. Compl. Count I, ¶¶ 49-56.) The Amended Complaint further alleges that the County discriminated against plaintiff in violation of the ADA/RA by failing to accommodate him with leave and terminating him for the related absences, his chronic pain condition, and treatment with prescription medication.  (<u>Id.</u> Count II, ¶¶ 57-67.)  Finally, the Amended Complaint alleges that defendant violated the ADA when Mr. Garren wrongfully disclosed plaintiff's private medical information to third parties.  (<u>Id.</u> Count III, ¶¶ 68-72.)

Mr. Hambright has moved for partial summary judgment regarding liability on his FMLA interference claim only.  The County has moved for summary judgment on all three claims.  The undersigned addresses the parties' Motions in turn, recognizing that the facts must be viewing in a light most favorable to the non-movant with regard to each.

27

### A.   Plaintiff's Motion for Partial Summary Judgment as to Liability on his FMLA Interference Claim

The FMLA confers certain rights on an eligible employee, including two relevant here: the right to take up to twelve weeks of leave during any twelve-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions" of his job, 29 U.S.C. § 2612(a)(1)(D), and the right to be restored to his former or an equivalent position at the end of that leave, id. § 2614(a)(1).   "When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances."  29 C.F.R. § 825.300(b)(1).

The FMLA creates two types of claims for employees to protect their rights, "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act."  Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1293 (11th Cir. 2006) (internal quotation marks omitted).  A plaintiff must also show that he "has been prejudiced by the

28

[FMLA] violation" in some way.  Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002); see also Evans v. Books-A-Million, 762 F.3d 1288, 1296 (11th Cir. 2014 ("It is clear to us that, in order to prove that she was 'prejudiced' by an FMLA violation, a plaintiff . . . need only demonstrate some harm remediable by either 'damages' or 'equitable relief.'")) (internal citation omitted); Anderson v. Discovery Cmmc'ns, LLC, 517 F. App'x 190, 198 (4th Cir. 2013) (per curiam) ("Such prejudice can be proven by showing that the employee . . . suffers some loss in employment status remediable through 'appropriate' equitable relief . . . .") (quoting 29 U.S.C. § 2617(a)(1)(B)).

Mr. Hambright asserts an interference claim here and seeks entry of partial summary judgment on that claim as to liability.  "An interference claim has two elements:  (1) the employee was entitled to a benefit under the FMLA, and (2) [the] employer denied . . . that benefit."  White v. Beltram Edge Tool Supply, Inc., 789 F.3d 1188, 1191 (11th Cir. 2015).[51]  The employee need not allege that his employer intended to deny the benefit, because "the employer's motives are

_____

[51] It is undisputed that the County did not send Mr. Hambright a notice of FMLA eligibility, but rather terminated him, i.e., denied plaintiff the benefit. Thus, to succeed on his Motion, Mr. Hambright must establish no genuine dispute as to any material fact regarding his entitlement to a benefit under the FMLA.

29

irrelevant." <u>Strickland v. Water Works & Sewer Bd. of Birmingham</u>, 239 F.3d 1199, 1208 (11th Cir. 2001).

The core requirements for triggering an employer's FMLA obligations in the fact pattern presented here are (1) an eligible employee with a serious health condition, and (2) adequate communication, meaning a timely communication from the employee sufficient to put his employer on notice that the protections of the Act may apply. <u>See</u> 29 U.S.C. § 2612(a)(1)(D); 29 C.F.R. § 825.303. Plaintiff asserts there is no dispute that his September 2015 leave was for a serious health condition, that the County knew that the leave may have been needed for an FMLA-qualifying reason, and that it failed to comply with the Act's eligibility notice requirements as set forth in 29 C.F.R. § 825.300. (Pl.'s Br. Supp. [46].)  Defendant responds that plaintiff did not suffer from a FMLA-qualifying health condition and that, regardless, he did not give the County notice of a potential need for such leave sufficient to trigger its FMLA obligations. (Def.'s Br. Opp'n [59].)  The Court addresses those two key issues in turn below.

### 1.   FMLA Qualifying Medical Condition

The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment

30

by a health care provider." 29 U.S.C. § 2611(11). There was no inpatient care here; thus, plaintiff proceeds under the definition found in subparagraph (B). Under regulations issued by the United States Department of Labor ("DOL"), a serious health condition involving continuing treatment by a health care provider includes any one or more of the following:

> (a) Incapacity[52] and treatment. A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> > (1) Treatment two or more times, within 30 days of the first day of incapacity . . .; or
> >
> > (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment[53] under the supervision of the health care provider.
> >
> > (3) The requirement in paragraphs (a)(1) and (2) of this section for treatment by a health care provider means an in-person visit to a health care provider. The first (or only) in-person treatment visit must take place within seven days of the first day of incapacity.

––––––––––––––––––––

[52] "The term incapacity means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b).

[53] "A regimen of continuing treatment includes, for example, a course of prescription medication (e.g., an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition (e.g., oxygen)." 29 C.F.R. § 825.113(c).

> (4) Whether additional treatment visits or a regimen of continuing treatment is necessary within the 30-day period shall be determined by the health care provider.

29 C.F.R. § 825.115(a)(1)-(4).

Here, the undisputed evidence shows that Mr. Hambright had a period of incapacity of three consecutive days or more, and was treated by a health care provider resulting in a regimen of continuing treatment (i.e., a course of prescription medication).  Plaintiff hurt his back on or about September 24, 2015, and saw Dr. Norris two days later on September 26.  Dr. Norris prescribed plaintiff a muscle relaxer and advised him not to work his upcoming shift on September 28, and to avoid work until October 1.  See Murray v. Red Kap Indus., Inc., 124 F.3d 695, 698 (5th Cir. 1997) (when employee alleges that he has a serious health condition involving continuing treatment by a health care provider, he must first demonstrate a period of incapacity).  Viewing the facts in a light most favorable to defendant as the non-movant, it is undisputed that plaintiff's September 2015 back injury/pain constituted a serious health condition which left him unable to work beginning about September 24 through at least September 28.  Accordingly, the undersigned **REPORTS** that there is no genuine dispute as to whether plaintiff suffered from a FMLA-qualifying medical condition during the period at issue.  Thus, the Court turns to the issue of notice.

32

### 2.    FMLA Notice Requirements

An employee suffering from a serious health condition must give his employer notice of his need for FMLA leave and, therefore, can state an interference claim only if he gave sufficient notice.  White, 789 F.3d at 1195. Notice of the need for FMLA leave must satisfy two criteria—timing and content. With regard to timing, where the need for leave is unforeseeable, as is the case here, the employee must give notice as soon as practicable.  See 29 C.F.R. § 825.303(a).  "It generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave."  Id.

The parties do not dispute that Mr. Hambright informed the County as soon as practicable that he required leave twice, speaking with Mr. Moore on September 24—close to the date of his injury—and with Mr. Duncan on September 26—the date of his doctor's appointment.  Additionally, as discussed supra Part I.D, plaintiff was terminated on September 30, less than a week after his initial contact with Mr. Moore.  Thus, the County's policy requiring a physician's certification within 15 days of an FMLA request is inapplicable.[54]

_____

[54] Notably, the October 14, 2015 hearing did not extend plaintiff's

Therefore, with regard to timing, there is no genuine dispute over whether Mr. Hambright informed the County of his need for leave as soon as practicable under the circumstances.

The parties disagree, however, as to whether the content of Mr. Hambright's conversations with EMS supervisors Moore and Duncan was sufficient for it to determine if the FMLA applied.   The DOL regulation governing the content of notice for unforeseeable leave states as follows:  "An employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request. Depending on the situation, such information may include that a condition renders the employee unable to perform the functions of the job . . . ."   29 C.F.R. § 825.303(b). Subsection (b) then differentiates between first-time leave requests and those due to a qualifying reason for which FMLA leave had been granted previously. "When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention

---

termination date, as it was for name-clearing purposes only.  (See Southern Dep. 20-21.)  Regardless, on October 7, plaintiff filed his appeal with Ms. Southern and gave her the medical excuse that Dr. Norris had provided him at the September 26 visit.

the FMLA." Id. § 825.303(b).  However, "[w]hen an employee seeks leave due to a qualifying reason, for which the employer has previously provided the employee FMLA-protected leave, the employee must specifically reference either the qualifying reason for leave or the need for FMLA leave." Id.

As explained below, Mr. Hambright had not previously sought FMLA leave for the September 2015 injury that is at issue here; therefore, his notice obligation fell under that governing a first-time request.  It is undisputed that plaintiff requested and received FMLA leave for surgeries in 2009, 2012, and 2013.  (DSMF ¶ 3; see also DSAF ¶ 8; PSAF ¶ 55.)  While plaintiff's September 2015 absences also involved his back, they were not for the same qualifying reason for which defendant had previously provided him FMLA leave, i.e., surgery.  Instead, Mr. Hambright's request for leave due to his September 2015 back injury was his first with regard to that FMLA qualifying reason.  Accord 29 C.F.R. § 825.300(b)(1) ("Employee eligibility is determined (and notice must be provided) at the commencement of the first instance of leave for each FMLA-qualifying reason in the applicable 12-month period. . . . All FMLA absences for the same qualifying reason are considered a single leave and employee eligibility as to that reason for leave does not change during the applicable 12-month period." (citations omitted)).  Thus, Mr. Hambright did not need to "expressly assert rights

under the FMLA or even mention the FMLA" during his September 24 and 26 phone calls to his two supervisors.  See id. § 825.303(b).

Section 825.303(b) required Mr. Hambright to "provide sufficient information" for the County "to reasonably determine whether the FMLA may apply to the leave request."  29 C.F.R. § 825.303(b); see also id. § 825.300(b)(1) (employer must notify employee of eligibility to take FMLA leave within five business days of "acquir[ing] knowledge that an employee's leave may be for an FMLA-qualifying reason").  "[S]uch information may include that a condition renders the employee unable to perform the functions of the job; . . . whether the employee . . . is under the continuing care of a health care provider; . . . and the anticipated duration of the absence, if known."  29 C.F.R. § 825.303(b).  While "[c]alling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act," an "employer will be expected to obtain any additional required information through informal means."  Id.  With regard to the latter, the DOL's regulation imposes an obligation on the employee to "respond to an employer's questions designed to determine whether an absence is potentially FMLA-qualifying" and "[f]ailure to respond to reasonable employer inquiries regarding the leave request may result

in denial of FMLA protection if the employer is unable to determine whether the leave is FMLA-qualifying." Id.

Here, it is undisputed that Mr. Hambright informed Mr. Moore that he injured his back and would not be able to work on September 25, that Mr. Moore contacted plaintiff to remind him that he would need a doctor's excuse (at Mr. Garren's request), and that Mr. Hambright informed Mr. Duncan on September 26 that he would be absent for his shift on September 28 due to the possible compression fracture in his back and his doctor's recommendation that he take time off work to relieve the pain.[55]

---

[55] There is no evidence supporting defendant's contention that plaintiff simply called in "sick." Neither Messrs. Duncan nor Moore remember their conversations with Mr. Hambright in detail or dispute his testimony regarding the relevant facts summarized in the text preceding this note. (See Duncan Dep. 14-21; Moore Dep. 19-25.) Moreover, accepting Mr. Duncan's testimony that plaintiff responded "no" when asked if he wanted to take FMLA, such a response would not obviate the County's notice requirements under § 825.300. See 29 C.F.R. § 825.300(b)(1) ("[W]hen the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances."); id. § 825.300(d)(1) ("The employer is responsible in all circumstances for designating leave as FMLA-qualifying, and for giving notice of the designation to the employee as provided in this section."). In any event, as discussed in more detail infra, Mr. Hambright likely responded "no" to Mr. Duncan's question if he wanted to take FMLA because of the erroneous information he received about his rights.

Viewing the undisputed facts in the light most favorable to defendant and applying those facts to the DOL's regulation, Mr. Hambright informed the County that his injury rendered him unable to work, that he was being cared for by a physician, and that he would be unable to work at least through September 28. Thus, as per the DOL's regulation, Mr. Hambright adequately communicated sufficient information to put the County on notice that the FMLA may have applied to his leave requests. Defendant then had an obligation to obtain any additional required information to determine whether the absence was potentially FMLA-qualifying. See 29 C.F.R. § 825.303(b). Because the County acquired knowledge that plaintiff's leave request might have been for an FMLA-qualifying reason, its notice obligations under 29 C.F.R. § 825.300 were also triggered. Because the County took none of the required actions, it interfered with plaintiff's FMLA rights and prejudiced him by terminating his employment.[56]

---

[56] Plaintiff meets the low standard of being "prejudiced by the [FMLA] violation in some way," as it is undisputed that he lost some amount of income, insurance, and retirement benefits. See Evans, 762 F.3d at 1295 ("To prove FMLA interference, [plaintiff] must demonstrate that [she] was denied a benefit to which [she] was entitled under the FMLA and that she has been prejudiced by the violation in some way.") (internal quotation marks and citations omitted).

38

Accordingly, the undersigned **REPORTS** that no genuine dispute as to any material fact remains as to defendant's liability for interfering with plaintiff's right to notice under the FMLA.  See 29 C.F.R. § 825.300.  Mr. Hambright was entitled to an FMLA eligibility notice because he undisputedly suffered from a serious health condition and timely gave the County sufficient information to put it on notice that the FMLA may have applied to his leave requests.  Because defendant failed to notify plaintiff of his eligibility to take leave within five business days, but instead terminated him, the undersigned **RECOMMENDS** that plaintiff's Motion for Partial Summary Judgment as to defendant's liability under Count I be **GRANTED**.

The undersigned further **REPORTS**, and Mr. Hambright concedes (Pl.'s Br. Supp. 17-18), that a question of fact remains as to plaintiff's damages due to defendant's FMLA violation, and whether he is entitled to liquidated damages. See 29 C.F.R. § 825.400(c) (permitting an equal amount of damages to be awarded as liquidated damages unless reduced by the court because the violation was in good faith and the employer has reasonable grounds for believing it had not violated the FMLA).

### B.    Defendant's Motion for Summary Judgment

As noted above, the County seeks entry of summary judgment on plaintiff's FMLA interference claims, ADA/RA discrimination claims, and ADA wrongful disclosure claim.  The Court addresses each in turn below.

### 1.    Defendant's Motion Regarding Plaintiff's FMLA Claims

Plaintiff alleges that the County interfered with his FMLA rights by failing to comply with employer notice obligations under 29 C.F.R. § 825.300, incorrectly informing him of his rights, telling him it would be "a lot of paperwork," failing to inform plaintiff that he would be terminated if he did not invoke those rights, and terminating him before he could invoke his rights formally.  (See Am. Compl. ¶¶ 49-56.)

Defendant argues that plaintiff's September 2015 absences should not be considered for FMLA leave because he repeatedly failed to provide a physician's certification clearing him for duty after his February 13, 2015 fitness examination. (Def.'s Mem. Supp. [52-1] 16-18.)[57]  The County also contends that even if Mr.

_____

[57] Defendant also argues that plaintiff cannot show he required intermittent FMLA leave.  (Def.'s Mem. Supp. 21-22; Def.'s Reply 2.)  This argument is irrelevant, as the question at hand is whether Mr. Hambright was entitled to FMLA notice and leave (regardless of whether it was continuous or intermittent) and whether defendant interfered with that right.

Hambright had requested FMLA leave it would have terminated him due to excessive absences unrelated to his medical condition and failure to provide a requested certification. (Def.'s Mem. Supp. 19-20; Def.'s Reply 2.) Plaintiff responds by discussing the several ways in which he alleges defendant interfered with his FMLA rights, and observing that defendant's Motion only addresses his termination. (Pl.'s Resp. 4.) Plaintiff then notes that defendant cannot prevail on its Motion regarding that portion of his FMLA claim because it has conflated an earlier requested physician's certification with a certification that would have been required under the FMLA had defendant considered him for such leave in September 2015 instead of terminating him. (Id. at 6-9.) Plaintiff also takes exception to defendant asserting reasons for terminating him at this late stage in the litigation that are different than those stated in Mr. Garren's memorandum. (Id. at 10-17.) In Reply, defendant takes umbrage at plaintiff's assertion that he alleged multiple FMLA interference claims in a single Count, and reiterates its assertion that Mr. Hambright's failure to provide a certification releasing him to work while taking his medications defeats Count I. (Def.'s Reply 1-3.)

As an initial matter, the Court notes that the Amended Complaint alleges several ways in which defendant interfered with plaintiff's FMLA rights. Indeed, for the reasons set forth supra Part III.A, there is no genuine dispute as to any

41

material fact regarding the County's liability for interfering with Mr. Hambright's FMLA notice rights.  Moreover, defendant's arguments that plaintiff has no claim under the FMLA because he failed to submit the requisite FMLA certification is nonsensical because the County never afforded him a meaningful opportunity to seek FMLA leave.[58]  In cases such as this, where the need for FMLA leave is not foreseeable, the employer must notify the employee of his eligibility and any specific expectations and obligations of the employee, e.g., requisite certifications, and explain any consequences for failing to meet those obligations.  See 29 C.F.R. 825.300(b)-(c).  The employee then has fifteen days to provide the requisite certification.  See id. § 825.313(b).

It is undisputed that defendant never provided plaintiff with an FMLA eligibility notice; thus, plaintiff had no obligation to provide defendant with an FMLA certification.  Moreover, viewing the facts in the light most favorable to Mr. Hambright as the non-movant, the County provided him inaccurate information regarding his possible FMLA eligibility, attempted to dissuade him

_____

[58] The Court also notes that, regardless, viewing the facts in the light most favorable to Mr. Hambright as the non-movant, Mr. Garren told plaintiff that he had received the earlier requested fitness for duty documents and that plaintiff was cleared for duty.  (See supra Part I.B.1.)

42

from seeking such leave by emphasizing the amount of paperwork required, and failed to inform him of the consequences of not seeking FMLA leave.  Finally, the County's assertion that it would have terminated plaintiff regardless due to excessive absences unrelated to his medical condition and his failure to provide a required fitness for duty certification must be raised as an affirmative defense at trial.[59]  Those reasons are not set forth in the September 29, 2015 memorandum written by Mr. Garren (the decisionmaker) that explained his reasons for terminating Mr. Hambright.  (See supra Part I.D.)  A causal nexus is not an element of an FLMA interference claim; thus, defendant cannot prevail on that basis at this stage of the litigation.  See Spakes v. Broward Cty. Sheriff's Office, 631 F.3d 1307, 1309-10 (11th Cir. 2011) (per curiam) ("Our cases make clear that a causal nexus is not an element of an interference claim, but that the employer can raise the lack of causation as an affirmative defense. . . . [defendant] was entitled to raise its alleged lawful reasons for termination as an affirmative

---

[59] The Court assumes for purposes of ruling on the County's Motion that it sufficiently raised this affirmative defense in its Answer to the Amended Complaint [32].  (Ans. To Am. Compl., Second Defense ("Any alleged unlawful act or omission of Bartow County, its agents or employees, which alleged unlawful act or omission Bartow County specifically denies, was not the proximate cause of any alleged damages or injury suffered by Plaintiff.").)

defense to liability."); see also Connor v. Sun Trust Bank, 546 F. Supp. 2d 1360, 1370 (N.D. Ga. 2008).

Accordingly, a reasonable jury could find that defendant interfered with plaintiff's FMLA rights in the ways alleged and therefore the undersigned **RECOMMENDS** that defendant's Motion for Summary Judgment be **DENIED** with regard to plaintiff's FMLA claims set forth in Count I of the Amended Complaint.

### 2.    Defendant's Motion Regarding Plaintiff's ADA/RA Discrimination Claims

Plaintiff alleges that the County discriminated against him in violation of the ADA and RA by failing to grant a reasonable accommodation (i.e., additional leave for his pain flare-up) and by terminating him because of his disability. (See Am. Compl. ¶¶ 57-67.) The County argues that Mr. Hambright cannot establish a prima facie discrimination claim because he does not have a disability (the first element) and is not a qualified individual (the second element). (Def.'s Mem. Supp. 10-12; Def.'s Reply 9-11 & n.8.) Defendant also contends that, regardless, plaintiff failed to request an accommodation for his alleged disability and cannot

44

identify one.  (Def.'s Mem. Supp. 12; Def.'s Reply 9-11.)[60]  In response, plaintiff asserts that he can establish the first two elements of a prima facie disability case (Pl.'s Resp. 19-20) and that his request for leave may constitute a reasonable accommodation request (id. at 25 (citing Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 647 (1st Cir. 2000)).[61]

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of

---

[60] Plaintiff observes that defendant's Motion for Summary Judgment failed to address his ADA and RA discrimination claims with regard to his termination. (Pl.'s Resp. 24.)  In reply, defendant asserts that plaintiff cannot succeed without establishing that he is a qualified individual and again contends that he is not, a point defendant also made in its initial brief.  (Def.'s Reply 11 & n.8; see also Def.'s Mem. Supp. 12.)  Thus, the Court will consider defendant's contention with regard to plaintiff's claim of discriminatory termination.

[61] In its Reply, defendant argues that plaintiff failed to respond to the Motion for Summary Judgment regarding his RA claim and has abandoned it. (Def.'s Reply 13.)  In a Surreply, plaintiff denies this and explains that, as did defendant, he discussed his ADA and RA discrimination claims jointly because they rely on the same standards and are essentially identical claims.  (Pl.'s Surreply  7.)  Plaintiff also notes that the introductory paragraph in his response regarding his discrimination claims begins:  "With respect to Mr. Hambright's claims under the [ADA] and [RA] . . . ."  (Id. (quoting Pl.' Resp. 19).) The Court agrees with plaintiff and does not consider his RA claim to be abandoned.

employment." 42 U.S.C. § 12112(a).  The standard for liability under the ADA is the same as that under the RA.  See Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).  Therefore, plaintiff's ADA and RA claims share the same prima facie case.  See Holbrook v. City of Alpharetta, Ga., 112 F.3d 1522, 1526 n.2 (11th Cir. 1997).

Without direct evidence, AD/RA discrimination claims employ the McDonnell Douglas burden-shifting analysis.  See Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1226 (11th Cir. 1999).  To establish a prima facie case of employment discrimination under these statutes, a plaintiff bears the initial burden to show that: (1) he has a disability[62]; (2) he is a qualified individual[63] with or without a reasonable accommodation; and (3) he was subjected to an

_____

[62] The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1)(A)-(C).  A physical impairment alone, however, is not necessarily a disability as contemplated by the ADA.  See Pritchard v. So. Co. Servs., 92 F.3d 1130, 1132 (11th Cir. 1996).

[63] The ADA defines a "qualified individual" as someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

46

adverse action because of his disability.[64]  Rossbach v. City of Miami, 371 F.3d 1354, 1356-57 (11th Cir. 2004) (per curiam).

One type of discrimination in an ADA/RA case includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  42 U.S.C. § 12112(b)(5)(A). The employee has the burden of identifying a reasonable accommodation that would allow him to perform the essential functions of his job.  Earl v. Mervyns, Inc., 207 F.3d 1361, 1367 (11th Cir. 2000) (per curiam).  Indeed, the Eleventh Circuit has held that "a plaintiff cannot establish a claim under the [ADA/RA] alleging that the defendant discriminated against him by failing to provide a reasonable accommodation unless he demanded such an accommodation." Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363 (11th Cir. 1999) (per curiam); see also 29 C.F.R. pt. 1630 App. § 1630.9 (EEOC's ADA interpretive guidelines, which provide:  "In general . . . it is the responsibility of

_____

[64] The question of whether an action is adverse is objective, such that "[a]n ADA plaintiff must demonstrate that a reasonable person in his position would view the employment action in question as adverse."  Doe v. DeKalb Cty. Sch. Dist., 145 F.3d 1441, 1449 (11th Cir. 1998).  An employment action is adverse "if it results in some tangible, negative effect on the plaintiff's employment." Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1261 (11th Cir. 2001).

47

the individual with a disability to inform the employer that an accommodation is needed."). Thus, "the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made." Gaston, 167 F.3d at 1363.

While the Eleventh Circuit has not "determined precisely what form the request [for reasonable accommodation] must take," Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1261 n.14 (11th Cir. 2007), it has indicated in an unpublished opinion that a demand is specific enough to trigger the duty where the employer has "enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable [employer] to make appropriate inquiries about the possible need for an accommodation.'" United States v. Hialeah Hous. Auth., 418 F. App'x 872, 876 (11th Cir. 2011) (per curiam) (internal quotations and citation omitted);[65] see

_____

[65] Although Hialeah Housing Authority involved the Fair Housing Act ("FHA"), the Circuit looked to the ADA and RA for guidance in evaluating the reasonable accommodation standard. 418 F. App'x at 876. In doing so, the panel considered ADA cases from the Tenth and Third Circuits explaining that the employee need not use "magic words" and that what information is sufficient to put the employer on notice depends on the circumstances. Id. (discussing Smith v. Midland Brake, Inc., 180 F.3d 1154, 1172 (10th Cir. 1999) ("[A]n [employee] need not use magic words."); Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 313

48

also <u>Hunt v. Aimco Props., L.P.</u>, 814 F.3d 1213, 1226 (11th Cir. 2016) (holding

in a FHA case that "a plaintiff can be said to have made a request for

accommodation when the defendant has enough information to know of both the

disability and desire for an accommodation.") (internal quotations marks and

citation omitted).

 If the plaintiff establishes a prima facie case, an inference of discrimination

is raised, and the burden shifts to the defendant. <u>Tex. Dept. of Cmty. Affairs v.</u>

<u>Burdine</u>, 450 U.S. 248, 254 (1981). The defendant may rebut that inference by

articulating "legitimate nondiscriminatory reasons" for the alleged discriminatory

action. <u>Id.</u> at 256. This burden is "exceedingly light," <u>Perryman v. Johnson</u>

<u>Prods. Co.</u>, 698 F.2d 1138, 1142 (11th Cir. 1983), and, if satisfied, the

presumption of discrimination is eliminated and plaintiff must show that the

nondiscriminatory reason articulated by the defendant is a mere pretext. <u>See</u>

---

(3d Cir. 1999) ("What information the employee's initial notice must include
depends on what the employer knows."); and <u>Colwell v. Rite Aid Corp.</u>, 602 F.3d
495, 506-07 (3d Cir. 2010) ("[T]he law does not require any formal mechanism or
'magic words' to notify an employer that an employee needs an accommodation
and circumstances will sometimes require the employer to meet the employee
half-way, and if it appears that the employee may need an accommodation but
doesn't know how to ask for it, the employer should do what it can to help.")
(internal citations omitted)).

<u>Burdine</u>, 450 U.S. at 256.   Summary judgment in favor of the defendant is appropriate if the plaintiff is unable to make a sufficient showing to rebut the proffered reasons for the employment decision.   <u>Bogle v. Orange Cty. Bd. of Cty. Comm'rs</u>, 162 F.3d 653, 658 (11th Cir. 1998).

Here, the County's arguments that plaintiff cannot establish that he is disabled or a qualified individual (the initial elements of a prima facie discrimination case) are unavailing.   First, it is undisputed that plaintiff's pain condition caused severe functional impairments that, if untreated, prevented him from carrying out daily activities (<u>i.e.</u>, basic mobility, walking, and lifting).   (<u>See</u> PSAF ¶ 11, discussed <u>supra</u> note 5.)   That Mr. Hambright's medication ameliorates his pain and permits him to function does not change his status as disabled for purposes of the ADA and RA.   <u>See</u> 42 U.S.C. § 12102(4)(E)(i)(I) ("The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as— . . . medication.").   Second, defendant has failed to make a clear argument as to why plaintiff cannot establish that he is a qualified individual. Moreover, viewing the facts in the light most favorable to plaintiff as the non-movant, he performed the essential functions of his position from his initial employment in 2004 until his termination in 2015.   It appears Mr. Hambright did

so by working with a physician to adjust his pain medication (<u>i.e.</u>, switching between Tramadol and Hydrocodone) and utilizing his vacation and sick leave. (<u>See</u> Pl.'s Dep. 53.)  Therefore, plaintiff can establish the first two elements of a prima facie ADA and RA discrimination case—that he has a disability and is a qualified individual.

With regard to plaintiff's discriminatory termination claim, he can establish the third element of a prima facie case, as termination is an adverse employment action. Likewise, there is evidence that the decisionmaker, Mr. Garren, was biased against plaintiff based on his use of pain medication.  (<u>See</u> <u>supra</u> Part I.D.) Finally, the County entirely failed to engage in the <u>McDonnell Douglas</u> burden-shifting analysis, <u>i.e.</u>, to articulate a legitimate non-discriminatory reason for its action that would shift the burden back to plaintiff to rebut as pretext.  (<u>See</u> <u>generally</u> Def.'s Mem. Supp.; Def.'s Reply.)   Thus, the inference of discriminatory termination based on disability raised by plaintiff's establishment of a prima facie case remains un-rebutted.

With regard to Mr. Hambright's reasonable accommodation claim, viewing the facts in the light most favorable to him as a non-movant, a reasonable jury could find that he requested accommodation, and defendant failed to make a reasonable accommodation for his known disability.  Given that the Eleventh

51

Circuit has not precisely determined what form an accommodation request must take, plaintiff's statements to Supervisors Moore and Duncan that he had injured his back and would not be able to work until October 1, coupled with defendant's knowledge of his back condition and continued use of pain medication, may have been specific enough to put the County on notice of plaintiff's need for an accommodation and to trigger its duty to begin the interactive process.[66] Moreover, under the circumstances, a leave of absence from September 25 to October 1 (the date Dr. Norris recommended for plaintiff to return to work) may have been a reasonable accommodation.  See Wood v. Green, 323 F.3d 1309, 1314 (11th Cir. 2003) (stating that "a leave of absence might be a reasonable accommodation in some cases," but finding the plaintiff's request for an indefinite leave of absence so that he could work at some uncertain point in the future was not; see also id. ("The ADA covers people who can perform the essential functions of their jobs presently or in the immediate future").

---

[66] Plaintiff's deposition testimony that he never asked the County for "an accommodation in terms of not doing certain activities" does not change the above analysis.  (See Pl.'s Dep. 53.)  A request for limited medical leave is different from a request to eliminate specific job duties, and there is no evidence disputing Mr. Hambright's September 25 and 28 conversations with defendant regarding his back injury and need for time off.  (See supra Parts I.B.2-3.)

Additionally, given plaintiff's apparent success adjusting his medication per his physician's recommendation to accommodate his work schedule (Hambright Decl. ¶ 16), it appears his pain condition could have been accommodated.[67]   Therefore, viewing the evidence in the light most favorable to Mr. Hambright, he can establish a prima facie case of discrimination for failure to provide a reasonable accommodation.   Again, the County failed to engage in the <u>McDonnell Douglas</u> burden shifting analysis on this claim.   Therefore, the inference that defendant failed to make a reasonable accommodation to plaintiff stands un-rebutted.

In sum, the undersigned **RECOMMENDS** that defendant's Motion for Summary Judgment be **DENIED** as to plaintiff's ADA/RA discrimination claims set forth in Count II of the Amended Complaint.[68]

---

[67] The County attempts to introduce evidence by attaching additional exhibits [65-1, 65-2] to its Reply brief, but failed to include any facts based on those documents in its Statement of Facts.   (<u>Compare</u> Def.'s Reply, <u>with</u> DSMF.) Thus, the Court may not consider those exhibits in ruling on the County's Motion for Summary Judgment.   <u>See</u> N.D. Ga. Civ. R. 56.1(B)(1)(d) ("The court will not consider any fact: . . . set out only in the brief and not in the movant's statement of undisputed facts."); <u>see also</u> <u>White v. Crystal Mover Servs., Inc.</u>, No. 1:14-CV-3202-ELR-JSA, 2016 WL 8787057, at *23 (N.D. Ga. Jan. 26, 2016) (declining to consider facts not included in the plaintiff's statement of material facts).

[68] The Court notes that, "[i]f the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case."

### 3.     Defendant's Motion Regarding Plaintiff's ADA Wrongful Disclosure Claim

Plaintiff alleges that the County violated the ADA by unlawfully disclosing his private medical information (Count III).   (See Am. Compl. ¶¶ 68-72.) Defendant asserts that plaintiff cannot maintain a wrongful disclosure claim because he voluntarily disclosed his medical information to co-workers, including Mr. Garren, without being requested to do so.   (Def.'s Mem. Supp. 13-15.) Plaintiff responds that Mr. Garren inquired into his medical condition and the medications use to treat it, and specifically did so in the context of a fitness for duty examination.  (Pl.'s Resp. 20-22.)  Mr. Hambright argues that any general knowledge his co-workers may have had regarding his medical condition does not defeat his wrongful disclosure claim because Mr. Garren revealed previously unknown medical information, and plaintiff suffered anger, sadness, embarrassment, and violation as a result.  (Id. at 22-24.)

---

Burdine, 450 U.S. at 254.  However, an entry of judgment in plaintiff's favor on Count II at this stage of the litigation is not appropriate.  First, plaintiff did not request an entry of judgment regarding his ADA and RA claims.  Second, the Court does not stand as the trier of fact and Mr. Hambright must persuade a jury that he has proven prima facie cases of discrimination based on his termination and defendant's alleged failure to accommodate.

54

The ADA strictly limits the inquiries an employer may make regarding an employee's medical condition, as well as the uses to which such information may be put once it is gathered.   An employer "may conduct voluntary medical examinations" as well as "make inquiries into the ability of an employee to perform job-related functions."   42 U.S.C. § 12112(d)(4)(B).   However, information obtained under § 12112(d)(4)(B) is subject to the following restrictions:

> (B) information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record, except that—
>
>> (i) supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations;
>>
>> (ii) first aid and safety personnel may be informed, when appropriate, if the disability might require emergency treatment; and
>>
>> (iii) government officials investigating compliance with this chapter shall be provided relevant information on request; and
>
> (C) the results of such examination are used only in accordance with this subchapter.

Id. (d)(3)(B)-(C); see also id. § 12112(d)(4)(C) ("Information obtained under subparagraph (B) regarding the medical condition or history of any employee are subject to the requirements of subparagraphs (B) and (C) of paragraph (3).").

Read together, § 12112(d)(4)(B), § 12112(d)(4)(C), and § 12112(d)(3)(B), subject to limited exceptions, require an employer who makes inquiries into the ability of an employee to perform job-related functions or who obtains information about an employee's medical condition or history must collect and maintain that information on separate forms, keep it in separate medical files, and treat it as a confidential medical record.

Here, there is evidence that defendant obtained plaintiff's prescription drug history and information about his medical condition when making inquiries into his ability to perform job-related functions, and later revealed it to other employees without a job-related purpose.  Indeed, it is undisputed that Mr. Garren, as director of the County EMS, questioned Mr. Hambright as to what types of medication he was using and that plaintiff disclosed his specific pain medications. (See supra Part I.A.)  Additionally, in February 2015, Mr. Garren requested that plaintiff submit to a fitness for duty examination with a physician; plaintiff did so and provided Mr. Garren with the results.  (See supra Part I.B.)  Finally, viewing the facts in the light most favorable to plaintiff as the non-movant, Mr. Garren revealed plaintiff's use of prescription pain medication to Messrs. Gillespie and Wheelis without meeting one of the exceptions set forth in 42 U.S.C. 12112(d)(3)(B).  Thus, a reasonable jury could find that the County's supervisor

wrongfully disclosed Mr. Hambright's private medical information in violation of the ADA; therefore, the undersigned **RECOMMENDS** that defendant's Motion for Summary Judgment be **DENIED** as to Count III of the Amended Complaint.

## IV.   CONCLUSION

For the reasons explained above, the undersigned **RECOMMENDS** that plaintiff's Motion for Partial Summary Judgment [46] be **GRANTED** as to defendant's liability under Count I (alleging an FMLA interference) with regard to the notice requirements set forth in 29 C.F.R. 825.300.   The undersigned **FURTHER RECOMMENDS** that defendant Bartow County's Motion for Summary Judgment [52] be **DENIED**.

The Clerk is **DIRECTED** to terminate the reference to the Magistrate Judge.

**SO RECOMMENDED**, this 11th day of July, 2017.


_Walter E. Johnson_
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

57